# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHARLES DAVID WHITEHEAD**                                    **CIVIL ACTION**

**VERSUS**

**PAT BOOK, ET AL**                                                       **NO. 08-51-D-M2**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, September 23, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**CHARLES DAVID WHITEHEAD**                                **CIVIL ACTION**

**VERSUS**

**PAT BOOK, ET AL**                                          **NO. 08-51-D-M2**

**MAGISTRATE JUDGE'S REPORT**

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 3) filed by petitioner, Charles David Whitehead ("Whitehead").  The State has filed an answer and a memorandum in opposition to that petition.  (R. Docs. 8 and 9).

**PROCEDURAL BACKGROUND**

Whitehead was charged by an amended bill of information with one count of fourth offense operating a vehicle while intoxicated in violation of La. R.S. 14:98(E)(4)(b).  He pled not guilty to the charge and proceeded to a jury trial on April 13, 2005.  Following the trial, Whitehead was found guilty as charged.  He was subsequently adjudicated a third felony offender and sentenced on June 22, 2005 to twenty-four (24) years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence and a $5,000.00 fine.[1]  The trial court ordered the sentence to run consecutively to any other sentence petitioner was serving.

On May 23, 2006, Whitehead appealed his conviction and sentence to the Louisiana First Circuit Court of Appeals.  In that appeal, he raised the following issues:  (1) Whether the Louisiana Legislature's enactment of La. R.S. 40:1379(D), which grants safety

---

[1] In addition to the sentence and fine imposed upon Whitehead, the state trial judge also ordered that Whitehead's vehicle be sold and that the proceeds be delivered to the Office of the District Attorney to be disposed of in accordance with Louisiana law.

enforcement officers in the Department of Public Safety ("DPS") the same authority and protection afforded to the police employees of the Division of the State Police, violates the Louisiana Constitution and thereby nullifies the authority of DPS Security to make a legal and constitutional stop and arrest; (2) Whether defining the crime of Driving While Intoxicated as "operating a vehicle while under the influence of alcoholic beverages," set forth in La. R.S. 14:98, is unconstitutionally vague; (3) Whether the testimony of DPS Officer Miller and Sergeant Rhodes regarding their opinion of whether Whitehead was "intoxicated" was improperly admitted as lay opinion; (4) Whether the testimony of Officer Miller regarding the results of the field sobriety tests should have been disallowed as a result of the officer being unqualified and inexperienced to administer the tests and properly analyze the results; and (5) Whether an employee of a State Agency, who is not the custodian of the records, can testify to information contained in the records when they have not been properly authenticated, certified, or introduced.  On November 3, 2006, the First Circuit affirmed Whitehead's conviction and sentence.  Whitehead applied for writs to the Louisiana Supreme Court, asserting the same five claims listed above.  The Louisiana Supreme Court denied his writ application on June 22, 2007.

Whitehead then filed his present habeas petition in the United States District Court for the Eastern District of Louisiana on November 26, 2007.  His case was subsequently transferred to this Court on January 24, 2008.  In his habeas petition, he asserts the same five claims that he presented to the state appellate courts.  His claims appear to be timely and exhausted, and the merits of such claims will therefore be addressed herein.

2

**FACTUAL BACKGROUND**

On March 5, 2004, at approximately 4:39 a.m., DPS Police Officer Stephen Miller ("Officer Miller") came upon Whitehead's pickup truck blocking the intersection of Greenwell Springs and Joor Roads in Baton Rouge, Louisiana.[2]  The engine of the pickup truck was running, but Whitehead appeared to be asleep at the wheel with a beer bottle in his lap. Officer Miller attempted to awaken Whitehead by tapping on the window.  He then opened the door of the pickup truck, which awoke Miller, and the truck began moving.  Officer Miller put the vehicle into park and asked that petitioner exit the vehicle.

When Whitehead got out of the truck, he was very unsteady on his feet, and the beer that had been in his lap spilled onto the floorboard of the truck.  Officer Miller escorted him to the back seat of the police unit and moved Whitehead's truck into a nearby parking lot.  Based upon the alcohol that Officer Miller smelled on Whitehead's person, the fact that Whitehead had been asleep at the wheel of his vehicle with a beer in his lap, and the fact that he was so uneasy on his feet, Officer Miller decided to investigate further as to a possible DWI stop and arrest.  Officer Miller advised Whitehead of his *Miranda* rights, which Whitehead indicated he understood.  DPS Sergeant Mike Rhodes ("Sergeant Rhodes") then arrived at the scene to assist Officer Miller.  Officer Miller administered field sobriety tests to Whitehead, which he failed, and Whitehead was then arrested for operating a vehicle while intoxicated ("DWI").[3]  Officer Miller advised Whitehead of his rights relating

---

[2] Officer Miller was in route to his employment as a security guard for the State Capital grounds.

[3] According to Officer Miller's testimony at trial, prior to the administration of the field sobriety tests, he asked Whitehead if he had experienced any head injuries in the past and whether he wore glasses or contacts, and Whitehead responded negatively.

to the chemical breath test for intoxication, and Whitehead refused to take the test.

At his trial, Whitehead testified that he had five prior DWI convictions; however, he claimed that, at the time of the offense in question, he was only drinking a sixteen-ounce Dr. Pepper.[4]  He also denied that his truck was in the intersection when Officer Miller discovered him sleeping in his truck.  He testified that he dozed off while waiting for the traffic light to change.  He also denied needing assistance to exit his truck and claimed that his performance on the field sobriety tests was impacted by the fact that he was tired and because he was wearing cowboy boots when the tests were administered to him. Whitehead also testified that his performance on the tests was impacted by prior head injuries, including a fractured skull he sustained in a car accident in 1987 and a head injury that occurred during a prison fight in 1992.  He indicated that the reason he did not take the chemical breath test was because he had been told by "everybody and their brother" to refuse the test and because he was upset and aggravated with Officer Miller.

## LAW & ANALYSIS

As mentioned above, each of the claims contained in Whitehead's habeas petition was previously submitted to and ruled upon by the state courts on direct appeal.  In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court, the Court must find that adjudication of such claim:  (1) resulted in a decision that is contrary to, or involves an

Whitehead also indicated that he was comfortable taking the field sobriety tests in his cowboy boots.

[4] According to Officer Miller's testimony, Whitehead told him at the scene of his arrest that he had consumed a few beers; however, when they reached Officer Miller's office, Whitehead changed his story and said he had only been drinking Dr. Pepper.

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2).

In addition, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994).  Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to § 2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures.  *Id.* at 631.

**I.     Does La. R.S. 40:1379D violate La. Const. Art. VI, §6?**

In this claim, Whitehead contends that the Louisiana Legislature's enactment of La.R.S. 40:1379D, which grants safety enforcement officers in the DPS, like Officer Miller, the same authority and protection afforded to the police employees in the Division of the State Police, is an unconstitutional extension of the state's inherent police powers and violates Article VI, §6 of the Louisiana Constitution through unwarranted interference and intrusion by the state government.[5]  As a result, he contends that Officer Miller lacked

---

[5] La. R.S. 40:1379D provides:

A.     The police employees of the division shall prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, keep the peace and good order in the state in the enforcement of the state's police powers, and perform any other related duties imposed upon them by the legislature.

5

constitutional authority to stop and arrest him for DWI, and any evidence seized as a result

of such arrest should have been suppressed.  In addressing this claim on appeal, the First

> B.      Police employees of the division are peace officers and, any
> provision of the law to the contrary notwithstanding, except
> R.S. 40:1386 [industrial disputes], they have, in any part of
> the state, the same powers with respect to criminal matters
> and the enforcement of the law relating thereto as sheriffs,
> constables, and police officers have in their respective
> jurisdictions.  They have all the immunities and matters of
> defense now available or hereafter made available to
> sheriffs, constables, and any police officers in any suit
> brought against them in consequence of acts done in the
> course of their employment.
>
> C.      Any warrant of arrest or other process issued by the
> legislature or either house thereof, or any court of the
> state may be served and executed by any police
> employee of the division in any part of the state
> according to the tenor thereof without endorsement.
>
> D.      Other police employees of the office, including but not
> limited to safety enforcement officers, public safety
> services police officers, and officers of the weights
> and standards mobile police force shall be
> commissioned under this Section and shall have all
> the authority and protection afforded by the provisions
> of this Section.

La. R. S. 40:1379.  A "police employee" for purposes of R.S. 40:1379 is any employee
who is assigned to police work as a peace officer pursuant to R.S. 40:1379, and
"division" refers to the Division of State Police in the Department of Public Safety.  La.
R.S. 40: 1372(3), (5).

La. Const. Art. VI, §6 provides:

> The legislature shall enact no law the effect of which
> changes or affects the structure or organization or the
> particular distribution and redistribution of the powers and
> functions of any local governmental subdivision which
> operates under a home rule charter.

La. Const. Art. VI, §6.

Circuit Court of Appeals did not reach the constitutional issue since courts are to refrain from reaching the constitutionality of legislation unless the issue is essential to resolution of the case or controversy. *See*, First Circuit's Opinion, R. Doc. 3-2, citing *Plainview Area Association v. State*, 05-0791 (La. 4/29/05), 900 So.2d 837, 838 (per curiam). The First Circuit found that it could resolve the issue presented without addressing the constitutional question because, separate and apart from Officer Miller's challenged authority as a police officer, Officer Miller was authorized, as a private person, to arrest Whitehead for aggravated obstruction of a highway of commerce.

Specifically, the First Circuit explained that, pursuant to La. C.Cr.P. art. 214 and *State v. Jackson*, 584 So.2d 266, 268 (La. App. 1 Cir.), *writ denied*, 585 So.2d 577 (La. 1991), a private person may make an arrest when the person arrested has committed a felony, whether in or out of the presence of the person making the arrest. The court of appeal noted that aggravated obstruction of a highway of commerce in violation of La. R.S. 14:96 is a felony.[6]  Considering Officer Miller's testimony at trial that he came upon Whitehead's truck blocking the intersection of Greenwell Springs Road and Joor Road, with the engine running and Whitehead asleep at the wheel therein, the First Circuit found that the requisite elements of La. R.S. 14:96 were met when Officer Miller arrested Whitehead. In other words, the First Circuit found that Officer Miller had the authority to make a citizen's arrest of Whitehead, regardless of whether he had the constitutional authority as a safety

---

[6] La. R.S. 14:96 defines "aggravated obstruction of a highway of commerce" as the "intentional or criminally negligent placing of anything, or performance of any act, on any road or highway, wherein it is foreseeable that human life might be endangered."

enforcement officer with the DPS, and therefore dismissed Whitehead's constitutional claim.

As noted above, the First Circuit's findings relative to this claim are entitled to a presumption of correctness.  Whitehead has failed to come forward with any convincing arguments or evidence demonstrating that the First Circuit incorrectly applied the law or unreasonably determined the facts in light of the evidence.  Both the Fifth Circuit Court of Appeals and the United States Supreme Court have recognized that federal courts also have a duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.  *ACORN v. Edwards*, 81 F.3d 1387 (5th Cir. 1996), citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).  Thus, the Louisiana First Circuit's decision not to address the constitutional question presented by Whitehead is not contrary to, or an unreasonable application of, clearly established federal law.  Because Officer Miller had authority as a citizen to arrest Whitehead for aggravated obstruction of a highway of commerce,[7] this Court also need not reach the issue of the constitutionality of 40:1379D

_____

[7] Driving under the influence in violation of La.R.S. 14:98 is also a felony, a violation of which can result in a citizen's arrest.  *Sisk v. Shelby County, Tenn.*, 110 F.3d 64 (6th Cir. 1997)(A police officer acting beyond his or her authority may use the citizen's arrest statute to validate an otherwise unlawful arrest for driving under the influence because it is a public offense); *State of Tennessee v. Durham*, 1995 WL 678811, at *2 (Tenn.Crim.App. 1995)(finding that a citizen's arrest statute authorized an officer to arrest a defendant for DUI outside of the officer's jurisdiction).

Furthermore, the fact that Officer Miller ultimately used the power of his office to gather evidence in support of Whitehead's DWI arrest (through field sobriety tests), which power is unavailable to private citizens, does not invalidate the citizen's arrest for DWI.  Courts have held that a citizen's arrest for DWI is valid where an officer develops the necessary reasonable belief that an offense has been committed (*i.e.*, probable cause for an arrest) through means available to an ordinary citizen, such as observing

in order to determine the validity of Whitehead's arrest and the related seizure of evidence. Finally, it is a settled rule of constitutional law that felony warrantless arrests made in public places, such as citizen's arrests, do not violate the Fourth Amendment of the U.S. Constitution. *Schauer v. Burleigh County*, 1987 WL 90271 (D.N.D. 1987), citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976).[8]   Accordingly, Whitehead's first claim should be dismissed.

## II.     Is La. R.S. 14:98 unconstitutionally vague?

In this claim, Whitehead contends that defining the crime of "driving while intoxicated" as "operating a vehicle under the influence of alcoholic beverages" is

––––––––––––––––––

erratic driving behavior, etc., and then subsequently uses his/her police power, including the use of their authority to request a defendant to step out of the car and consent to a search, the administration of field sobriety tests, and the subsequent physical arrest of the defendant.  *See, People v. Ciesler*, 710 N.E.2d 1270, 1274-75 (Ill.App.Ct. 1999)(holding that, having already obtained enough evidence to warrant a traffic stop, an officer effecting a citizen's arrest could use the power of his office to obtain additional evidence by asking for the defendant's driver's license and conducting field sobriety tests); *People v. Carlson*, 307 Ill.App.3d 77, 81, 240 Ill.Dec. 302, 716 N.Ed.2d 1249, 1252 (1999); *U.S. v. Mitchell*, 2007 WL 3022210 (E.D.Mo. 2007).  Thus, because, in the present case, Officer Miller had already developed the necessary reasonable belief that an offense had been committed to warrant a traffic stop through means available to an ordinary citizen (in that he had observed Whitehead's truck blocking the intersection of Greenwell Springs Road and Joor Road and had observed Whitehead sleeping at the wheel with a beer bottle in his lap), Officer Miller's citizen's arrest of Whitehead was valid (and the admission of evidence obtained pursuant to that arrest was proper) where he subsequently administered field sobriety tests to Whitehead and arrested him. Whitehead's arguments to the contrary lack merit.

[8] *See also, Wion v. Willingham*, 252 F.Supp. 306 (D.Colo. 1965)(California Penal Code section, authorizing private person to make an arrest when a felony has been committed and he has reasonable cause for believing that person arrested committed it, was constitutional).  Thus, Whitehead's argument, that Officer Miller's arrest of him without a warrant and the use of evidence obtained as a result of the stop and arrest violate the Fourth Amendment, lacks merit.

unconstitutionally vague.[9] In considering this claim, the First Circuit explained that statutes are presumed to be valid and must be upheld as constitutional whenever possible. It further explained that a statute is considered unconstitutionally vague if a person of ordinary intelligence is not capable of discerning the statute's meaning and conforming his conduct thereto. *See*, First Circuit's Opinion, R. Doc. 3-2. A penal statute must give adequate notice that certain contemplated conduct is proscribed and punishable by law and must provide adequate standards for those charged with determining the guilt or innocence of the accused. The First Circuit referred to La. R.S. 14:3, relating to interpretation of criminal statutes, which provides that criminal provisions are to "be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." *Id.* In light of such interpretive standards, the First Circuit found that the phrase "under the influence" in La. R.S. 14:98 does not render the statute unconstitutionally vague because the terms "intoxicated" and "under the influence of alcoholic beverages" have a "certain and well-understood meaning, *i.e.*, a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating

---

[9] La. R.S. 14:98 provides, in pertinent part, that:

A. (1)    The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:

(a)    The operator is under the influence of alcoholic beverages[.]

La. R.S. 14:98.

10

an automobile in a manner in which an ordinary prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions." *Id.* In support of that conclusion, the First Circuit relied upon the Louisiana Supreme Court's decision in *State v. Hightower*, 238 La. 876, 116 So.2d 699, 703 (1959).[10]

Like the Louisiana Supreme Court and the Louisiana First Circuit, the Fifth Circuit Court of Appeals has held that a criminal statute is not unconstitutionally vague if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *U.S. v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005). Furthermore, when a vagueness challenge to a statute does not involve First Amendment freedoms, the court is to examine the statute only in light of the facts of the case at hand. *Id.* The Louisiana First Circuit's decision that La. R.S. 14:98 is constitutional comports with the standards

---

[10] In *Hightower*, the Louisiana Supreme Court explained that statutes which make it a criminal offense to operate or drive a motor vehicle "while intoxicated," "while in an intoxicated condition," or "under the influence of intoxicating liquor" have been adopted in practically all jurisdictions and have been generally recognized as a valid exercise of the state's police power to regulate the use and operation of motor vehicles and to safeguard the people from injury or death caused by drivers who operate their vehicles while under the influence of intoxicating liquor or narcotic drugs. *Id.*, at 882. The Supreme Court further noted that, in all jurisdictions where the constitutionality of such statutes has been challenged on grounds of vagueness, the courts have upheld the statutes, reasoning that the terms "while under the influence of intoxicating liquor" or "while in an intoxicated condition" are commonly used terms with a well-recognized meaning. *Id.* The court also cited to its previous decision in *State v. Dudley*, 159 La. 872, 106 So. 364, where it found valid a city ordinance which prohibited the driving of a motor vehicle "while under the influence of liquor" because the ordinance "clearly set[] forth what [was] forbidden." *Id.*

under federal law for determining whether a statute is unconstitutionally vague, in that the First Circuit determined whether an ordinary person using the common meaning of the terms contained therein would understand that his/her actions were unlawful. *Id.* Moreover, when that statute is considered in light of the specific facts of Whitehead's case, it is clear that La. R.S. 14:98 put him on notice of the conduct that was unlawful. Having been previously convicted under that statute five times,[11] he certainly understood what conduct was proscribed by the statute and the punishment he could receive. *Edwards v. Butler*, 882 F.2d 160 (5th Cir. 1989)(A statute is not unconstitutionally vague if it clearly defines the conduct prohibited and the punishment authorized). Finally, Whitehead has failed to come forward with clear and convincing evidence rebutting the presumably correct findings of the state courts on this issue.[12] Accordingly, his second claim should also be dismissed.

---

[11] Although Whitehead had been previously convicted for DWI five times, he could only be charged with fourth offense DWI because that is the highest grade for that offense. As long as the State proved beyond a reasonable doubt that Whitehead had three prior DWI convictions within a ten (10) year period while he was out of prison, he could be convicted of fourth offense DWI. *See*, State trial transcript, R. Doc. 12, p. 186; 480.

[12] In support of his argument that La.R.S. 14:98 is unconstitutionally vague, Whitehead relies upon the fact that, during voir dire, one of the potential jurors, Ms. Rome, indicated that she was confused as to how the State was going to prove that someone was "under the influence" in accordance with that statute. However, Ms. Rome was the only potential juror who expressed any difficulty in understanding and applying La.R.S. 14:98, and additional questioning of her indicated that she did not agree with the statute, as written, and would not enforce it under any circumstance. She was not selected as a juror and was dismissed for cause. *See*, State trial transcript, R. Doc. 12, p. 187-89; 206-208. This single individual's disagreement with the manner in which the statute was written and refusal to enforce it does not indicate that an ordinary person would not understand it, considering that the remainder of individuals in the jury pool expressed no such concerns.

III.   **Did the trial court err in admitting the testimony of Officer Miller and Sergeant Rhodes as to their opinions of whether Whitehead was under the influence?**

In this assignment of error, Whitehead contends that the testimony of Officer Miller and Sergeant Rhodes concerning their impressions of whether he was under the influence of alcohol at the time of the arrest should not have been admitted and that the admission of such testimony was so prejudicial that it is unlikely he received a fair trial.  Specifically, the testimony of Officer Miller and Sergeant Rhodes which is in question is as follows:

> Officer Miller:   [Whitehead] was impaired.  There's no way he could have safely operated a vehicle.  I mean, he was – simply by him being passed out in the intersection in the vehicle, that speaks for itself. He should not have been behind a wheel.
>
> * * *
>
> Officer Miller:   The basis I used for making my decision was, of course, the smell of alcoholic beverage, the beer in his lap, the fact that he was asleep and the way he performed on all the field sobriety tests.  Everything was consistent with the fact that he had been consuming alcoholic beverages.
>
> * * *
>
> Sergeant Rhodes:  In my opinion, based on what I observed from [Whitehead's] facial expression, his eyes, and the smell of alcohol from his breath as he was talking to me, I felt he was impaired.
>
> * * *
>
> Sergeant Rhodes:  I felt [Whitehead] had been drinking, sir, at the time that he talked to me, based on my experience and my years in law enforcement and dealing with people who have been intoxicated.
>
> * * *

13

State:                    Did you believe he was intoxicated?

Sergeant Rhodes:   Yes, Sir, I did.

*See*, State trial transcript, R. Doc. 12, p. 285, 351, 411, 419.

In considering this claim, the First Circuit explained that La. C.E. art. 701 allows fact witnesses, such as Officer Miller and Sergeant Rhodes, to provide testimony in the form of opinions or inferences if such opinions and inferences are:  (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.  La.C.E. art. 701.  The court of appeal also cited to several Louisiana cases, where it has been held that intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify.  *See*, First Circuit opinion, R. Doc. 3-2, citing *State v. Allen*, 440 So.2d 1330, 1334 (La. 1983) and *State v. Minnifield*, 31,527 (La. App. 2 Cir. 1/20/99), 727 So.2d 1207, 1212, *writ denied*, 99-0516 (La. 6/18/99), 745 So.2d 19.  The First Circuit concluded that the testimony of Officer Miller and Sergeant Rhodes was proper because they were testifying as to their conclusions and opinions based upon their observations of Whitehead, and their comments were rational in light of the circumstances to which they testified, in compliance with La.C.E. art. 701.[13]

---

[13] *See also, State v. Moten*, 510 So.2d 55 (La. App. 1 Cir. 1987), *writ denied*, 514 So.2d 126 (La. 1987)(where the subject of a lay witness's testimony is such that a person of ordinary experience may make a natural inference from observed facts, a lay witness may testify regarding those inferences, as long as the witness states the observed facts upon which the inference is based).

The Louisiana Supreme Court has also specifically held that a lay opinion as to whether a person is under influence is admissible.  *State v. Ryan*, 122 La. 1095, 48 So. 537 (La. 1909); *State v. Neal*, 321 So.2d 497 (La. 1975); *State v. Hight*, 810 So.2d 1250 (La. App. 2 Cir. 2002); *State v. Martin*, 607 So.2d 775 (La. App. 1 Cir. 1992); *State v.*

Fed. R. Evid. 701 similarly provides that lay opinion testimony may be elicited if it is based upon the witness's first-hand knowledge or observations. Fed. R. Evid. 701; *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679 (5th Cir. 2003). Furthermore, in prosecutions relating to charges of driving while intoxicated, opinion evidence is often admitted on the issue of the intoxication or sobriety of the defendant. AMJUR Autos §985 ("It has been held that such an opinion may be given by a lay witness . . ., and that the witness may describe the facts and circumstances that led to his or her opinion – that is, he or she may give details as to the appearance and conduct of the defendant as derived from observation, and then testify whether the defendant was intoxicated or sober"). The state trial court's decision to admit the opinion testimony of Officer Miller and Sergeant Rhodes (and the state appellate court's affirmation of that decision) was based upon the fact that those witnesses were merely testifying to their personal opinion based upon their rational, first-hand perceptions of Whitehead's actions. Both witnesses thoroughly explained the basis for their opinions. The Court does not find that the state courts' decisions were contrary to, or an unreasonable application of federal law; moreover, Whitehead has again failed to present clear and convincing evidence rebutting the presumed correctness of the state courts' decisions that Officer Miller's and Sergeant Rhodes' opinions were rational in

---

*Ayres*, 509 So.2d 763 (La. App. 2 Cir. 1987); *State v. Skeetoe*, 501 So.2d 931 (La. App. 2 Cir. 1987); *State v. McCoy*, 457 So.2d 887 (La.App. 3 Cir. 1984).

light of the circumstances to which they testified.[14]   Thus, this claim should also be dismissed.

**IV.   Did the trial court err in allowing Officer Miller to testify regarding the field sobriety tests he administered and the results of those tests?**

In this claim, Whitehead contends that Officer Miller should not have been permitted to testify as to the results of the field sobriety tests he conducted because he was "unqualified and inexperienced to administer [those] test[s] and properly analyze the results."   Under Louisiana law, in order to lay a proper foundation for the admission of evidence of intoxication based upon a field sobriety test, there must be a showing that the officer administering the test was trained and certified in administering the procedure and that the description of the manner in which the test was administered demonstrates that it was properly conducted.   *State v. Armstrong*, 561 So.2d 883 (La. App. 2 Cir. 1990); *State v. Breitung*, 623 So.2d 23, 25 (La. App. 1 Cir. 1993), *writ denied*, 626 So.2d 1168 (La. 1993).

In considering this claim on appeal, the First Circuit discussed Officer Miller's trial testimony concerning his training in the administration of field sobriety tests.   Specifically, Officer Miller testified that he received training concerning the horizontal gaze nystagmus

---

[14] Whitehead contends that Sergeant Rhodes should not have been permitted to testify concerning his opinion of whether or not Whitehead was intoxicated because Sergeant Rhodes was not trained in making DWI arrests and had no training in the area of determining impairment for purposes of such an arrest.   However, Sergeant Rhodes was not expressing an opinion as to whether Whitehead should be *arrested* for a DWI (in fact, the trial judge sustained objections to the State's questioning of Sergeant Rhodeas as to his opinion of whether Whitehead was a danger to operate a motor vehicle); he was merely testifying, as a lay person based upon his observations, as to whether or not Whitehead *appeared to be intoxicated/impaired*.   No formal training is required for a lay witness to express such an opinion.

(HGN) test, the walk-and-turn test, and the one-leg stand test during a forty-hour course at the Louisiana State Police Academy.  He explained that such course concentrated on detecting impaired behavior and the administration of field sobriety tests in the DWI context. When he completed that course, he received a certificate indicating that he had passed standardized field sobriety and Intoxilyzer 5000 training.  Officer Miller also testified that, during his training, he performed the three field sobriety tests upon numerous volunteers successfully.  Subsequent to his course with the Louisiana State Police Academy, Officer Miller received post-certification training at Louisiana State University.  *See*, State trial transcript, R. Doc. 12, p. 256-258; 261-63; 267-70; 272; 287; 337.

In addition to his training, Officer Miller also testified that he made one or two DWI arrests prior to Whitehead's arrest, during which he administered the HGN test.  *Id.*, at 249; 264; 270; 272-73; 288.  At trial, Officer Miller provided a detailed description of how he was trained to administer the field sobriety tests and how he demonstrated the tests for Whitehead at the time of his arrest.[15]  *Id.*, p. 258-60; 266-68; 272.  He went on to describe

---

[15] In his habeas petition, Whitehead makes much of the fact that Officer Miller reviewed his DWI manual the night before he testified at trial regarding the procedures and purposes underlying the field sobriety tests that he administered to Whitehead.  The Court does not find that such fact is indicative of a lack of qualification on Officer Miller's part to perform the tests because Officer Miller also indicated that he reviews the DWI manual prior to testifying each time he testifies at trial.  He further indicated that his testimony concerning his administration of the field sobriety tests to Whitehead was not based upon his reading of the DWI manual the night before his testimony.  He stated that he administers the tests the "same every time.  Every time [he] give[s] the instructions, [he] give[s] them in the exact same manner."  *See*, State trial transcript, R. Doc. 12, p. 317-18. In other words, it appears that Officer Miller simply read the DWI manual to refresh his recollection prior to testifying, which is permissible.  Furthermore, as the State notes in its opposition, Officer Miller's reading of the DWI manual could not change how he actually administered the tests to Whitehead on the night of his arrest; it was up to the jury to compare the proper procedures for administering the tests, as described by Officer Miller at trial, with the manner in which Officer Miller administered

to the jury Whitehead's performance on the various tests.[16]  *Id.*, p. 261; 264-65; 267-73; 346-50.  Based upon the above testimony elicited by the State, the First Circuit concluded that the State laid a propr foundation for Officer Miller's testimony concerning the administration and results of Whitehead's field sobriety tests.

Federal courts have also held that an officer trained and qualified to perform standard field sobriety tests may testify with respect to his or her observations of a defendant's performance of those tests if such tests were properly administered, and such observations are admissible as circumstantial evidence that a defendant was driving while intoxicated (DWI) or driving under the influence of alcohol (DUI).  *U.S. v. Horn*, 185 F.Supp.2d 530 (D.Md. 2002).  The Court finds that the state courts correctly ruled that a proper foundation had been laid for Officer Miller's testimony concerning Whitehead's performance on the field sobriety tests.  It was not only established that Officer Miller was

_____

the tests to Whitehead on the night in question, and to determine whether the tests were properly performed.

[16] Relative to the HGN test, Officer Miller testified that he informed Whitehead how to perform the test before administering it.  He then asked Whitehead to follow an ink pen with his eyes, and before administering the test, Officer Miller turned off the lights on his police unit.  Officer Miller testified that, during the HGN test, Whitehead lacked smooth pursuit in both eyes, displayed nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees.

As to the walk-and-turn test, Officer Miller testified that he physically performed and explained the test before asking Whitehead to perform it.  According to Officer Miller's testimony, not only did Whitehead fail to maintain his balance while listening to the explanation of the test, but, during the test, he also used his arms for balance, turned incorrectly, and took the wrong number of steps.

Finally, regarding the one leg stand test, Officer Miller testified that, after the test was demonstrated, Whitehead's body swayed while he tried to balance during the test, and Whitehead used his arms for balance and put his foot down four times before he failed to complete the test.

adequately trained and certified to perform such tests but also that he administered such tests in accordance with his training.  Accordingly, his observations and the test results were admissible as circumstantial evidence that Whitehead had been driving under the influence of alcohol, and this claim should also be dismissed.

**V.  Did the trial court err in allowing a parole officer to testify to information contained in records over which he was not the custodian and in admitting certain public records which were not authenticated?**

In this claim, Whitehead contends that the testimony of Probation and Parole Officer Williams Sellers ("Officer Sellers"), concerning petitioner's master prison record, should not have been allowed because the State failed to show that such information was within Officer Sellers' personal knowledge and/or that he was entrusted with the legal duty to make and retain that record.  Whitehead also asserts that the State was allowed to improperly introduce certain public documents, including bills of information, minute entries from the 19th Judicial District Court, and a parole certificate concerning him, because they were not certified or authenticated by a proper custodian of that record.

At trial, Officer Sellers was called upon by the State to testify as to the specific dates when petitioner entered into and exited the Louisiana prison system.  The State did not introduce Whitehead's actual master prison record but instead elicited such information from Officer Sellers for purposes of demonstrating that ten (10) years had not elapsed since Whitehead's last conviction as required by La. R.S. 14:98(F)(2).  Officer Sellers testified that, as a probation and parole officer with the Louisiana Department of Corrections, he was charged with the custody of certain records, including the master prison record, which is maintained by the Department of Corrections.  *See,* State trial transcript, R. Doc. 12, at p. 360.  He indicated that his job required him to keep records

19

regarding the incarceration (the entry and exit dates from the prison system) of each of the probationers and parolees that he supervised, including Whitehead, as part of his normal business.  *Id.*, at p. 361-63.

Based upon that testimony, the First Circuit determined that the testimony of Officer Sellers concerning the dates of Whitehead's incarceration obtained from Whitehead's master prison record, was properly admitted because, as Whitehead's probation and parole officer, Officer Sellers was the custodian of petitioner's master prison record and had personal knowledge of Whitehead's period of incarceration and release date.  The court of appeal found such information was properly admitted under the exception to the hearsay rule provided in La. C.E. art. 803.  Article 803(8) provides, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (8)   **Public records and reports.**   (a) Records, reports, statements, or data compilations, in any form, of a public officer or agency setting forth:
>
> (i)   Its regularly conducted and regularly recorded activities;
>
> (ii)   Matters observed pursuant to duty imposed by law and as to which there was a duty to report;
>
> (iii)   Factual findings resulting from an investigation made pursuant to authority granted by law.  Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.

La. C.E. art. 803(8).

20

The Court agrees with the First Circuit's conclusion that the testimony of Officer Sellers concerning Whitehead's incarceration and release dates, as derived from the master prison record, was properly admitted at trial. The State laid a proper foundation indicating that, as part of his regular job duties, Officer Sellers was required to have access to and maintain records containing the dates upon which prisoners enter and leave the prison system,[17] such that the hearsay exception contained in La.C.E. art. 803(8) is applicable. The fact that Officer Sellers did not personally enter that information into Whitehead's master prison record is irrelevant. Considering his personal knowledge of and access to such information, he was permitted to testify in that regard.

Finally, Whitehead also argues that certain public documents, including certified true copies of bills of information, minute entries from the 19th Judicial District Court, and a parole certificate concerning him, were improperly admitted because they were not authenticated by the State. *See,* State trial transcript, R. Doc. 12, p. 364-377; 395-98. However, such documents do not require formal authentication because they are self-authenticating pursuant to La. C.E. arts. 902, 904, and 905. La. C.E. art. 902 provides that a purported record, paper or other document of the State of Louisiana, or of any department, board, or agency thereof, when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification, is self-authenticating and does not require extrinsic evidence of authenticity as a condition precedent to admissibility. La. C.E. art. 902. Furthermore, pursuant to La. C.E. art. 904, when an original public document

---

[17] *See*, State trial transcript, R. Doc. 12, at p. 362-63.

21

is deemed self-authenticating, a copy of that document is also deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification.  La. C.E. art. 904.  Finally, La. C.E. art. 905 provides that documents authorized by law to be recorded or filed and actually recorded or filed in a public office, when certified as being true or correct by the custodian or other person authorized to make the certification, are self-authenticating.  La. C.E. art. 905.

The documents that Whitehead contends the State failed to authenticate are certified true copies of public documents of a department of the State of Louisiana that are required by law to be maintained, and such documents are self-authenticating under the Louisiana Rules of Evidence.  Moreover, such documents were properly introduced through Officer Sellers who, as a probation and parole officer employed by the Louisiana Department of Corrections, was required to maintain and have access to those documents.[18]  Whitehead's final claim should therefore be dismissed.  Accordingly, because the state courts' rulings in Whitehead's case comport with federal law and involve a reasonable resolution of the factual issues supported by the record, and Whitehead has failed to demonstrate otherwise,[19] his present habeas petition should be dismissed in its entirety.

---

[18] Moreover, the Court agrees with the First Circuit's conclusion that, even if the trial court committed error in admitting the testimony of Officer Sellers concerning the public documents in question, such error was indeed harmless since other testimony presented by the defense at trial indicated Whitehead's incarceration entrance and release dates.

[19] In his habeas petition, Whitehead merely re-asserts the same claims and arguments that he raised in the state courts, as if this Court is reviewing his claims *de novo*.  He has not demonstrated how the state courts' resolution of his claims was irrational in light of the evidence or contrary to federal law.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 3) filed by petitioner, Charles David Whitehead, be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, September 23, 2008.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**